Adam J Schwartz (SBN 251831)
5670 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
adam@ajschwartzlaw.com
(323) 455-4016

[Additional counsel appear on signature page]

*Attorney for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

CRYSTAL CHAPMAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SUNRUN INC.

Defendant.

Case No. 3:22-cv-2770

**COMPLAINT FOR INJUNCTION AND DAMAGES**

**Class Action**

**JURY TRIAL DEMAND**

Plaintiff Crystal Chapman ("Mrs. Chapman"), by her undersigned counsel, for this first amended class action complaint against Defendant Sunrun Inc. ("Sunrun") and their present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, allege as follows:

## I. INTRODUCTION

1. Nature of Action: As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million

complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. This case involves a campaign by Sunrun to market its solar services through the use of pre-recorded telemarketing calls in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

3. Moreover, Sunrun made telemarketing calls that, like Mrs. Chapman's, were registered on that National Do Not Call Registry.

4. Sunrun has been under the TCPA time and again. *E.g.*, *Chapman, et. al. v. Sunrun Inc.,* Civil Action No. 19-cv-1608 (N.D. Cal.); Notice Removal, *Saunders v. Sunrun, Inc.*, Case No. 1:19-cv-3127 (N.D. Ill. May 9, 2019), ECF No. 1; Compl., *Ewing v. Encore Solar, LLC*, Case No. 3:18-cv-02247-CAB-MDD (S.D. Cal. Sept. 27, 2018), ECF No. 1; Notice Removal, *Va v. Sunrun Inc.*, Case No. 1:18-cv-00856-JHR-KBM (D.N.M. Sept. 12, 2018), ECF No. 1; Notice Removal, *Barker v. Sunrun Inc.*, Case No. 1:18-cv-00855-KK-LF (D.N.M. Sept. 12, 2018), ECF No. 1; Compl., *Taylor v. Sunrun Inc.*, Case No. 5:18-cv-01207-JGB-SHK (C.D. Cal. June 5, 2018), ECF No. 1; Compl., *Knapp v. Sunrun, Inc.*, Case No. 2:18-cv-00509-MCE-AC (E.D. Cal. Mar. 8. 2018), ECF No. 1; Compl., *Bozarth v. Sunrun, Inc.*, Case No. 3:16-cv-3550-EMC (N.D. Cal. June 24, 2016), ECF No. 1; Compl., *Slovin v. Sunrun, Inc.*, Case No. 4:15-cv-05340-YGR (N.D. Cal. Nov. 20, 2015), ECF No. 1.

///

///

///

## II. PARTIES

5. Plaintiff Chapman is an individual.

6. Sunrun is a corporation.

7. It is a Delaware corporation.

8. Its principal place of business is 595 Market Street, 29th Floor, San Francisco, California 94105, in this District.

## III. JURISDICTION AND VENUE

9. Jurisdiction: This Court has federal-question subject matter jurisdiction over Plaintiff' TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). The Court has supplemental jurisdiction over Plaintiff' CIPA claims pursuant to 28 U.S.C. § 1367 because the CIPA violations are so related to the TCPA violations—arising from the same telemarketing—as to form part of the same case or controversy.

10. Personal Jurisdiction: This Court has personal jurisdiction over Defendant because: (A) they are headquartered in California; and (B) their conduct at issue was organized from their California headquarters;

11. Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to Plaintiff' claims—namely, the direction of the illegal telemarketing from Sunrun's headquarters—occurred in this District.

12. Intradistrict Assignment: Assignment to this Division is proper pursuant to Civil Local Rule 3-2(c) because a substantial part of the events or omissions that give rise to Plaintiff' claims—namely, the direction of the illegal telemarketing and illegal recording from Defendant's headquarters—occurred in San Francisco.

///

///

///

///

## IV. FACTS

### A. The Enactment of the TCPA and its Regulations

13. Robocalls Outlawed: Enacted in 1991, the TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1). Calls made by an ATDS or with a prerecorded or artificial voice are referred to as "robocalls" by the Federal Communications Commission ("FCC") and herein. Encouraging people to hold robocallers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(b)(3).

14. Rationale: In enacting the TCPA, Congress found: "Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 § 2(10). Congress continued: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* § 2(12).

15. The TCPA's sponsor described unwanted robocalls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30,821 (1991) (statement of Sen. Hollings).

16. Prior Express Written Consent: The FCC has made clear that "prior express written consent" is required before making telemarketing robocalls to wireless numbers. Specifically, it ordered:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and

> conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

*In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote omitted) (internal quotation marks omitted).

17. Do Not Call Registry: Additionally, the TCPA outlaws unsolicited telemarketing (robocalls or otherwise) to phone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2). Encouraging people to hold telemarketers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(c)(5).

**B. Sunrun's Years-Long History of Illegal Robocalls and Telemarketing**

18. Sunrun sells goods and services related to solar energy.

19. Some of Sunrun's marketing strategies involve using recorded messages.

20. Indeed, Sunrun has previously used dialing systems that support the use of recorded messages and *en masse* dialing, such as CallFire, Five9 and Ytel.

21. Recipients of these outbound calls, including Plaintiff, did not consent to receive them.

22. Sunrun's telemarketing calls were not necessitated by an emergency.

23. Thousands of people have complained to the FCC or FTC about telemarketing by Sunrun or its affiliates and vendors.

24. According to Sunrun's former employees, people who receive Sunrun's telemarketing are generally annoyed by it and don't want to buy Sunrun's products.

25. Violating the TCPA is profitable for Sunrun.

**C. Defendant' Unsolicited, Automated Telemarketing to Plaintiff**

26. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

27. Plaintiff's residential telephone number is (585) 414-XXXX.

28. That number has been on the National Do Not Call Registry for more than 30 days prior to July 16, 2021 and it has not been removed from the Registry since that time.

29. Mrs. Chapman uses the number for personal, residential, and household reasons.

30. The number is not associated with any business.

31. Plaintiff Chapman never consented to receive calls from Sunrun.

32. She never gave the Chapman Phone Number to Sunrun.

33. She never did business with Sunrun.

34. Sunrun called the Chapman Phone Number.

35. Sunrun made telemarketing calls to the Chapman Phone Number.

36. These calls were made on January 19, March 16 and March 24, 2022.

37. All of the calls that were answered were made with a pre-recorded message that promoted Sunrun's solar services by name.

38. In response to the January 19, 2022 call, in response to the prerecorded message, Plaintiff pressed a number requesting not to be contacted. In spite of this request, the prercorded calls continued on March 16, 2022 and March 24, 2022.

39. The pre-recorded message mentioned solar panels and inquired about if the call recipient owned a home.

40. On March 24, 2022, the Plaintiff's husband answered on Plaintiff's phone a recorded message, responded to the prerecorded prompts and was connected to live individual named "Britney" at Sunrun on the March 24, 2022 call, who promoted Sunrun's solar panel services by name consistent with the pre-recorded message received. The ability to directly transfer to a Sunrun employee by pressing a number in response to the prerecorded message demonstrates that the call was either placed by Sunrun itself of by an agent of Sunrun that Sunrun knew or should have known was placing illegal telemarketing calls on its behalf.

**D. The Nuisance Created by Defendant's Automated Telemarketing**

41. Before directing their automated telemarketing to them, Defendant never did anything to confirm that Plaintiff had provided prior express written consent to their telemarketing, and Defendant knew or should have known that Plaintiff had not provided prior express written consent to receive telemarketing calls promoting Defendant's goods or services and that illegal telemarketing was conducted on behalf of Defendant.

42. Plaintiff's attention was caught by the fact that the calls appeared local.

43. The telemarketing alleged herein: (A) invaded Plaintiff' privacy and solitude; (B) wasted Plaintiff' time; (C) annoyed Plaintiff; (D) tied up Plaintiff's phone line; and (E) harassed Plaintiff.

## V. CLASS ACTION ALLEGATIONS

44. Cellular Telephone Class Definition: Pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3), Plaintiff bring this case on behalf of two classes (each a "Class," collectively, the "Classes"). The first Class (the "Cellular Telephone Class") is defined as follows: All persons in the United States to whom: (A) Defendant, any of them and/or a third party acting on any of their behalf made a pre-recorded call; to a cellular telephone number; (B) using an artificial or prerecorded voice; between September 26, 2020, and the first day of trial.

45. DNC Class Definition: The second Class (the "DNC Class") is defined as follows: All persons in the United States to whom: (A) Defendant, any of them and/or a third party acting on any of their behalf sent a telemarketing call; (B) to a residential (including residential cellular) telephone number listed on the NDNCR for at least 31 days before at least two of such communications in a 12-month period; (C) between September 26, 2020 and the first day of trial.

46. Exclusions: Excluded from the Classes are Defendant, any entity in which Defendant has a controlling interest or that has a controlling interest in Defendant, Defendant legal representatives, assignees, and successors, the judges to whom this case is assigned and the employees and immediate family members of all of the foregoing.

47. Numerosity: The Classes are so numerous that joinder of all their members is impracticable.

48. Sunrun is among the largest solar energy companies in the United States.

49. Sunrun is publicly traded.

50. Commonality: There are many questions of law and fact common to Plaintiff and members of the Classes. Indeed, the very feature that makes Defendant's conduct so annoying—its automated nature—makes this dispute amenable to classwide resolution. These common questions of law and fact include, but are not limited to, the following: (A) whether the calls were dialed *en masse* by a pre-recorded message; (B) whether Defendant's desire to sell solar goods and services constitutes an "emergency" within the meaning of the TCPA; (C) whether Defendant had a pattern and practice of failing to obtain prior express written consent from people to whom it directed telemarketing; (D) whether Defendant had a pattern and practice of failing to remove numbers on the NDNCR from its telemarketing lists; and (E) whether Defendant's violations of the TCPA were knowing or willful.

51. Typicality: Plaintiff's claims are typical of the claims of the Classes. Plaintiff' claims and those of the Classes arise out of the same course of conduct by Defendant and are based on the same legal and remedial theories.

52. Adequacy: Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff have retained competent and capable counsel experienced in TCPA class action litigation. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so. The interests of Plaintiff and their counsel are aligned with those of the proposed Classes.

53. Superiority: The common issues arising from this conduct that affect Plaintiff and members of the Classes predominate over any individual issues, making a class action the superior means of resolution. Adjudication of these common issues in a single action has important advantages, including judicial economy, efficiency for Class members and classwide *res judicata* for Defendant. Classwide relief is essential to compel Defendant to comply with the TCPA. The interest of individual members of the Classes in individually controlling the

prosecution of separate claims against Defendant is small because the damages in an individual action (up to $1,500 per violation) are dwarfed by the cost of prosecution.

## VI. FIRST CLAIM FOR RELIEF

**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)—Robocalling) On Behalf of Plaintiff and the Cellular Telephone Class)**

54. Plaintiff reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

55. Defendant and/or its affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls to the cellular telephone numbers of Plaintiff and members of the Cellular Telephone Class using an artificial or prerecorded voice without prior express written consent.

56. Plaintiff and members of that Class are entitled to an award of $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

57. Plaintiff and members of that Class are entitled to an award of up to $1,500 in damages for each such knowing and/or willful violation. 47 U.S.C. § 227(b)(3).

58. Plaintiff and members of that Class are also entitled to and do seek an injunction prohibiting Defendant and/or its affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls to any cellular telephone number using an artificial or prerecorded voice without prior express written consent of the receiving party.

## VII. SECOND CLAIM FOR RELIEF

**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c)—Telemarketing) On Behalf of Plaintiff Chapman and the DNC Class**

59. Plaintiff Chapman realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

60. Defendant and/or its affiliates or agents violated the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2), by placing multiple unsolicited telemarketing calls within a 12-month period to the residential (including residential cellular) telephone numbers of Plaintiff Chapman and members of the DNC Class even though those numbers had been listed on the NDNCR for at least 31 days.

61. Plaintiff Chapman and members of that Class seek an award of $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

62. Plaintiff Chapman and members of that Class are entitled to and seek an award of up to $1,500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

63. Plaintiff Chapman and members of that Class are also entitled to and do seek an injunction prohibiting Defendant and/or its affiliates and agents from violating the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2), by placing unsolicited telemarketing calls to any telephone numbers listed on the NDNCR for at least 31 days.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of all members of the Classes, pray for judgment against Defendant as follows:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that actions complained of herein violate the TCPA;

E. An order enjoining Defendant and its affiliates, agents and related entities from engaging in the conduct set forth herein;

F. An award to Plaintiff and the Classes of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## IX. DEMAND FOR JURY

Plaintiff demand a trial by jury for all issues so triable.

## X. SIGNATURE ATTESTATION

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from each of its other signatories.

RESPECTFULLY SUBMITTED AND DATED this 10th day of May, 2022.

By: /s/ *Adam J Schwartz*
Adam J Schwartz, Attorney at Law (SBN 251831)

Anthony I. Paronich, *Pro Hac Vice Forthcoming*
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

Edward A. Broderick, *Pro Hac Vice Forthcoming*
ted@broderick-law.com
BRODERICK LAW, P.C.
176 Federal St., 5th Floor
Boston, Massachusetts 02110
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

Andrew W. Heidarpour, *Pro Hac Vice Forthcoming*
aheidarpour@hlfirm.com
HEIDARPOUR LAW FIRM, PPC
1300 Pennsylvania Avenue NW, 190-318
Washington, DC 20004
Telephone: (202) 234-2727

*Attorneys for Plaintiff and the Proposed Classes*